UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Docket No. 18-CR-10431-DJC |
| | ) |
| HANFORD CHIU, | ) |
| | ) |
| Defendant. | ) |

GOVERNMENT'S SENTENCING MEMORANDUM

Following a trial by jury, Defendant Hanford Chiu was convicted of both counts of the above-docketed indictment, which charges him with the receipt and possession of child pornography in violation of 18 U.S.C. § 2252A. For the reasons outlined below and to be articulated at the sentencing hearing, the government respectfully requests that this Court impose a low-end Guidelines sentence.

**FACTS**

The government relies on and incorporates the facts as set forth in the statement of offense conduct in paragraphs 7 through 12 of the Presentence Investigation Report ("PSR"), as well Probation's assessment of offender characteristics (PSR 40-63).

At trial, the government proved its case through the testimony of Homeland Security Investigations (HSI) agents, including Special Agent Peter Manning, who explained the evidence that was found on the defendant's computer. The defendant elected to take the stand and testify on his own behalf. Under oath, the defendant testified that he did not know any of the 23,000 child pornography files located on his computer were there, did not know that the Tor browser located on his computer was there, and did not implement the child pornography bookmarks on the browser. He also denied that he was the person who accessed specific child pornography files on

particular dates, including the date he was arrested, even though he admitted to accessing work-related files both immediately before and after some of those child pornography files. In finding the defendant guilty of knowingly receiving and possessing the child pornography at issue, the jury necessarily rejected this testimony.

## DISCUSSION

**I.    Sentencing Guideline Calculation**

Based on its computation of the defendant's total offense level as 35 and his criminal history category as I, the United States Probation Office ("Probation") has computed a Guidelines sentence in this case to include a term of incarceration from 168 months to 210 months; the Guidelines range of supervised release is five years to life.

The government agrees with Probation's calculation of the defendant's Offense Level and Criminal History Category,[1] and thus agrees with its determination of his Guidelines Sentencing Range (GSR) as outlined above.

The government has recently submitted restitution requests to the defendant and anticipates that the parties will be able to come to an agreement regarding appropriate awards for the few victims who have submitted requests for restitution. This Court need not make a determination of restitution at the sentencing hearing, but must do so within 90 days of sentencing, pursuant to 18 U.S.C. § 3664(d)(5). The government therefore requests that the Court schedule a date subsequent

---

[1] The government recognizes that the specific offense characteristic (SOC) outlined at USSG § 2G2.2(b)(1) might apply because the evidence at trial did not show that the defendant distributed child pornography. At sentencing, if necessary, the government could establish by a preponderance of the evidence that the defendant accessed and viewed child pornography with another individual (see PSR ¶ 7). The defendant did not object to the non-application of this SOC; the government brings it to the Court's attention out of an abundance of caution. If the Court were to apply this SOC and otherwise adopt Probation's calculation, the total offense level would be 33, and the corresponding GSR would be 135-168 months.

2

to the sentencing hearing, by which date the parties must submit memoranda, either jointly or separately, advocating for an appropriate award for each victim who has demonstrated the right to restitution.

## II.     Application of Specific Offense Characteristics and the Section 3553(a) Factors

However the Court calculates the GSR in this case, the Guidelines range most certainly does represent a significant range of punishment. The government contends that a sentence contemplated by the Guidelines, however, is one that reasonably fits the crime of which this defendant has been convicted. Based on an evaluation of all of the § 3553(a) factors, this Court should impose a low-end Guidelines sentence.

The government recognizes that it is difficult to quantify exactly how many months would satisfy the Court's obligation to impose a sentence that is just, that would adequately deter both this defendant and others who might commit the same type of crime, and that would protect the most vulnerable members of our society. Ultimately, this Court can be confident that a Guidelines sentence will achieve all of these goals of sentencing.

A significant sentence is necessary to reflect the gravity of the defendant's crimes. As the Sentencing Commission found in its 2012 report to Congress, "all child pornography offenses are extremely serious because they both perpetuate harm to victims and normalize and validate the sexual exploitation of children."[2] This is especially true here, where the defendant accessed child pornography in forums populated entirely by others who *value*, rather than vilify, the sexual

---

[2] U.S. Sentencing Commission, Congressional Testimony and Reports: Federal Child Pornography Offenses (2012), at 311, available at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Chapter_12.pdf.

exploitation of children. And, here, he was apparently an avid member of those forums for years; forensic evidence showed that he was accessing child pornography sites on Tor since at least 2011.

A Guidelines sentence is entirely reasonable and warranted in this case, notwithstanding the fact that it is, objectively, quite high. The government is familiar with the frequent defense argument that the specific offense characteristics applied in this case should be discounted by the Court because they are frequently applied in *other* cases as well. While that may be so, the government contends that the specific enhancements here are not simply applied as inherent to the offense, but adequately and accurately reflect the nature and circumstances of the offense, as described briefly below:

a. **§ 2G2.2(b)(2) (prepubescent minor):** There are many cases where defendants possess, distribute, receive, and produce images of children who are *not* prepubescent. The distinction between pubescent and prepubescent victims is an important one for this (and all) courts to consider, given that a victim's vulnerability is often directly correlated to his or her age.

b. **§ 2G2.2(b)(4)(A) (sadistic/masochistic conduct or exploitation of toddler)**: For the same reasons, the distinction between sadomasochistic violence and other types of sexual exploitation (or toddler or infant victims and older child victims) is important for the Court to take note of. Again, not all defendants are interested in every type of exploitation – but as a consumer of this type of material, the defendant drives the production of such material, and should be appropriately held accountable for such.

c. **§ 2G2.2(b)(7)(D) (number of images):** The government recognizes that it is relatively easy to "get to" 600 images when videos are included in a defendant's collection. That does not render the enhancement meaningless – especially in a case like this one, where the defendant received and possessed over 20,000 child pornography files. Even

without that volume, this SOC should not be disregarded just because most defendants qualify for its application because of their possession of videos.  If a picture says a thousand words, a video screams them from the rooftops.  Videos provide a stark reminder that the victims of this defendant's crimes are real, live children, who are raped or otherwise exploited *solely* for the pleasure of people like this defendant – who are not traumatized by having to watch other people sexually abuse or encourage the exploitation of children around the world, but who choose to do so because they either prefer it or need it for their own sexual gratification.  Videos *should* be weighted more heavily than images.  The enhancement is not meaningless – for the reasons described above, it is essential to avoid the desensitization that has beset us legal professionals as a byproduct of prosecuting, defending, and sitting in judgment of those that violate our child pornography laws.

The government submits this memo without the benefit of knowing what the defendant might possibly point to as mitigation evidence.  For example, the fact that the defendant appeared to be an educated, gainfully employed, functioning member of society whose criminal conduct came as a surprising revelation to those who knew him best demonstrates that we cannot rely on arrest statistics to inform us about true danger (i.e., the protection of the public), and there is no reason to believe that anything but a lengthy term in prison will deter this defendant from committing similar offenses in the future.  Similarly, the fact that the defendant comes before this Court with no prior record is not a mitigating factor in the context of these offenses.  The defendant's record was taken into consideration in the calculation of his criminal history category.  See, e.g., United States v. Oberg, 877 F.3d 261 (7th Cir. 2017) (district judge properly noted that defendants in child pornography cases often have limited criminal histories).  Furthermore, the fact that the defendant did not produce or distribute the child pornography is irrelevant; if there

was proof of such conduct, he would have been appropriately charged and punished. The defendant was charged, tried, and convicted of receiving and possessing videos and images of children as young as babies being sexually abused, which is in and of itself an exceedingly serious offense that merits a correspondingly serious punishment. Furthermore, this is a defendant who, as a sworn officer of the court, first broke the law; then failed to abide by his conditions of release; and then lied about his criminal behavior on the stand. Such conduct cannot go unacknowledged.

The government recognizes that it is always difficult to quantify in months or years "how much" is "enough" to achieve the goals of sentencing. While a Guidelines sentence here is significant in length, it is not only reasonable, but also necessary in this case to promote respect for the law, to adequately punish the defendant for his criminal conduct, to deter him and others from offending in the same ways again, and for long-term protection of the public.

## CONCLUSION

For all of the foregoing reasons, the government respectfully recommends that this Court impose a low-end Guidelines sentence. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

Respectfully Submitted,

ANDREW E. LELLING
United States Attorney

Date: January 31, 2021     By:     /s/ Anne Paruti
Anne Paruti
Adam W. Deitch
Assistant United States Attorneys
United States Attorney's Office
One Courthouse Way
Boston, MA 02210
617-748-3100

## CERTIFICATE OF SERVICE

I, Anne Paruti, hereby certify that the foregoing was filed through the Electronic Court filing system and will be sent electronically to the registered participant as identified on the Notice of Electronic filing:

Date: January 31, 2021                                              /s/ Anne Paruti
                                                                    Anne Paruti
                                                                    Assistant United States Attorney