UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:18-CR-10431-1 |
| | ) | |
| HANFORD CHIU | ) | |

**DEFENDANT HANFORD CHIU'S MOTION FOR A NON-GUIDELINES SENTENCE UNDER *BOOKER* AND SENTENCING MEMORANDUM**

In accordance with the Court's Procedural Order of February 11, 2020, Hanford Chiu, the defendant, through counsel, files this **Motion for a Non-Guidelines Sentence under *Booker* and Sentencing Memorandum** in support thereof.

## Summary Argument

The probation officer has completed a Presentence Investigation Report (PSR), dated September 23, 2020, in which he has made a recommended finding of 168 to 210 months for the Advisory Guideline Range (AGR).[1] The probation officer left open the question for the Court's determination, however, of whether the defendant obstructed justice at trial. The government contends that he did, while the defendant will argue, *infra,* that he did not. Additionally, although the defendant did not earlier file an objection with the probation officer, it has since come to his attention that the specific characteristic under U.S.S.G. § 2G2.2(b)(1), which provides for a downward adjustment of two levels, may well apply to the defendant's guideline calculations. The defendant will address this issue, *infra*, as well. If the Court agrees with the defendant's position on both of these issues, then the AGR would become 135 to 168 months.

Beyond these matters, the defendant wishes to advance two significant factors under *Booker*[2] for the Court's consideration. The first falls under the rubric of the personal history and characteristics of the defendant under 18 U.S.C. § 3553(a)(1). It is simply a personal tragedy that this young Chinese immigrant and naturalized citizen who had achieved so much in his young life would have committed the instant offense. Why this is so lies, at least in part, in a confluence of

---

[1] PSR, ¶ 65.
[2] *U.S. v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 621 (2005).

unique family factors and resultant psychological disorders which afflicted the defendant and affected his conduct in adolescence and young adulthood.  The second falls loosely under the rubric of the need to avoid unwarranted sentence disparity with related defendant ▇▇▇ ▇▇▇▇ under 18 U.S.C. § 3553(a)(6).  ▇▇▇▇▇▇▇▇ AGR was actually *higher* than the defendant's, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, ▇▇▇▇▇, he received a sentence fully 70% below the lower term of his AGR.  The defendant believes that when the Court fully takes these factors into consideration, it will conclude that a sentence within the AGR would be much greater than necessary to meet the purposes of sentencing recounted in 18 U.S.C. § 3553(a)(2)(A-D).  "Sufficient but not greater than necessary" to meet these purposes and to do justice in this case would be a sentence of imprisonment of 100 months and a term of supervised release of five years.

### Obstruction of Justice Issue

For an obstruction of justice adjustment to be applied, it must be material to the merits of the case, *i.e.,* the outcome of the prosecution's case at trial.  It is quite evident that, in the face of overwhelming evidence to the contrary, the jury summarily dismissed the defendant's testimony.  Under these circumstances, that outcome was not materially affected in any way and, therefore, no obstruction of justice adjustment should be applied.

### Specific Characteristic under U.S.S.G. § 2G2.2(b)(1)

This specific offense characteristic provides that "if the defendant's conduct was limited to the receipt or solicitation of material the involving sexual exploitation of a minor" and "the defendant did not intend to traffic in, or distribute such material," a two-level downward adjustment should be applied.  In its Sentencing Memorandum, the government has acknowledged that "the evidence at trial did not show that the defendant distributed child pornography."[3]  Accordingly, the defendant submits that his guideline calculation should include this two-level downward adjustment.

### History and Characteristics of the Defendant

---

[3] Government's Sentencing Memorandum,  p. 2, footnote 1.

The Court has before it an accurate and largely comprehensive PSR detailing the defendant's history and personal characteristics. It also has had the benefit of a mental health assessment by Dr. Theresa DeSantis dated September 15, 2018, a psychiatric evaluation by Mitchell Bank, M.D., and a subsequent letter from Dr. DeSantis dated May 8, 2019. These matters, as well as notes from the defendant's counseling sessions, can be found in Appendix A under *Mental Health Documents from Probation Officer*. Also there is a psychological evaluation conducted by Eric Y. Drogin, J.D., Ph.D., ABPP, dated January 29, 2021, which can be found as well in Appendix A.

What emerges from these sources is the story of a tragedy of a driven and troubled young man who, though outwardly successful, was afflicted by psychological disorders which formed the background for his interest in and ultimately obsession with child pornography. His parents immigrated to this country from Hong Kong in 1996 when the defendant was six and his sister one. They had waited over ten years for this opportunity. His parents arrived in New York without any support network and struggled to find jobs as many immigrants do. While the defendant was in the early years of school, the defendant's mother worked a full-time job and also attended college to attain a degree. The defendant's father lost a job in the tech industry early on and ended up as a contractor in a position requiring him to travel extensively. As a result, he became a "hands-off" parent, leaving the parental responsibilities to his overcommitted wife. In these circumstances, the defendant helped care for his younger sister, largely kept to himself otherwise, and became attracted to video games. He excelled in school, however, graduating from Stuyvesant High School in New York City, the Military College of South Carolina (The Citadel), and Boston College Law School. He was but 25 years old when he achieved his J.D. degree.

Behind all of this (at least beginning in his high school years), however, he was depressed and prone to anger. He told Dr. DeSantis that his mood was often flat and emotionally detached. He spent much of his time, apart from his studies and watching his sister, playing video games or surfing the internet. The defendant's mother acknowledges regretfully in her letter that she was unavailable due to her job and studies to both her children and her husband during this time. As a result, in retrospect she was not able to protect the defendant from harmful exposure that the internet, in particular, can have for young people. Her letter, as well as her daughter's, lend insight into how this might have happened to the defendant and also the kind of person he otherwise is. The Court's attention is respectfully invited to both of the letters which can be found in Appendix B.

The mental health assessment and psychiatric evaluation completed subsequent to the defendant's arrest, and the more recent psychological evaluation support diagnoses of Major Depression and Dysthymia (persistent depression), respectively. These findings suggest that the defendant has long suffered psychologically and that his involvement in the instant offense is linked to that history. Moreover, Dr. Drogin in his Psychological Evaluation points to "a lack of appropriate and sustained parental oversight" as possibly facilitating harmful online exposure, and to obsessive-compulsive symptomatology[4] as possibly accounting for the fact that the defendant had such a great volume of child pornographic material in his possession.[5]

### The Need to Avoid Unwarranted Sentence Disparity

As the Court is aware, the matter of ▮▮▮▮▮▮▮▮▮▮▮▮ is a related case to the instant matter. The government investigated Mr. ▮▮▮▮▮ for violations of child pornography laws first. He had been involved in a relationship with the defendant for approximately five years.[6] ▮▮▮▮▮▮▮▮▮▮▮▮ Mr. ▮▮▮▮▮ pleaded guilty to both Receipt of Child Pornography and Possession of Child Pornography, similar to the charges the defendant was later convicted of. Mr. ▮▮▮▮▮▮▮▮▮▮▮▮ government and was sentenced to 45 months' imprisonment and five years' supervised release on October 16, 2019.[7]

What is worthy of note is that Mr. ▮▮▮▮▮ Total Offense Level (after the three-level downward adjustment for acceptance of responsibility credit) was 34. This means that his Offense Level prior to such credit was 37, two levels higher than that of the defendant who does not have the benefit of an Acceptance of Responsibility adjustment. In the end, Mr. ▮▮▮▮▮ AGR was found to be 151 to 188 months based on a Total Offense Level of 34 and a Criminal History Category of I.[8] All of this means that Mr. ▮▮▮▮▮ was actually a more serious offender than the

---

[4] In his psychiatric evaluation in Appendix A, Dr. Bank found that the defendant displayed symptoms of Obsessive Compulsive Personality Disorder. Also referenced in PSR, ¶ 50.
[5] Appendix A, *Psychological Evaluation by Eric Y. Drogin, J.D., Ph.D. ABPP*, p. 3.
[6] PSR, ¶ 46.
[7] See PSR, ¶ 5.
[8] ▮▮▮▮▮▮▮▮▮▮▮▮, Document 59. What is also worthy of note is the fact that Mr. ▮▮▮▮▮ admitted to investigators that he had also *distributed* child pornography on the Internet. See, HSI Special Agent Iannaccone Affidavit in Support of Search Warrant, ¶ 6; SA Iannaccone's HSI Synopsis report (USAO 0001). With the assistance of the Royal Canadian Mounted Police, Canadian Police Center for Missing and

defendant concerning violations of child pornography laws. So, not unlike what happens in many other criminal cases involving multiple defendants, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and reaps the benefit of a significantly lower sentence. In Mr. ▮▮▮▮▮▮▮ case, the benefit was a 70% reduction in his sentence.

The defendant is not suggesting in any way that Mr. ▮▮▮▮▮▮▮ sentence was inappropriate. The Court has the authority in such circumstances to impose whatever sentence it deems just. The point, however, is that Mr. ▮▮▮▮▮▮▮ was actually a *more serious* offender than the defendant but placed himself in a position to help himself by pleading guilty ▮▮▮ The defendant could certainly have pleaded guilty, but he chose not to which was his right. ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This raises the question of the need for greater sentencing equity across these two cases. Should the defendant, who was the less culpable of the two defendants, really receive a sentence of either 168 months' or 135 months' imprisonment, which would represent 3.7 times or 3.0 times, respectively, the sentence which the more culpable Mr. ▮▮▮▮▮▮▮ received? The defendant is not suggesting that he receive a variance anywhere near the magnitude of Mr. ▮▮▮▮▮▮▮ departure,[9] only that there be an equity adjustment in the defendant's case so that unwarranted disparity might be avoided.[10]

### Analysis in Light of 18 U.S.C. § 3553(a)(2)(A-D) Sentencing Purposes

Before imposing sentence, the Court is obligated to address the sentencing purposes recounted in 18 U.S.C. § 3553(a)(2)(A-D). An analysis of this case in light of those purposes follows.

*(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.*

---

Exploited Children, investigators were able to verify that Mr. ▮▮▮▮▮▮▮ had distributed at least one image of child pornography using his Kik chat account to another person. See, SA Iannaccone's Details of Investigation report (USAO 0002). ▮▮▮▮▮▮▮ was never charged with such distribution.

[9] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[10] Under 18 U.S.C. § 3553(a)(6), the issue of unwarranted sentence disparity can be considered for "defendants with similar records who have been found guilty of similar conduct." This principle applies, the defendant submits, to the respective and related cases of the defendant and ▮▮▮▮▮▮▮.

There is no question but that the instant offense is of significant seriousness. The AGR reflects this fact, and the impact on victims cannot be minimized. At the same time, there was clearly a confluence of family and other factors in this Hong Kong immigrant and naturalized citizen's young life which formed the background to his obsession with video games on the internet, to his depression and suicidal ideation, and ultimately to his obsession with child pornography. These factors do not in any way excuse the defendant's conduct, but they do help to explain it. Beyond this, the defendant submits that respect for the law in terms of avoiding unwarranted sentence disparity would be fostered if some measure of parity were achieved in the defendant's case with that of the outcome in related case ██████████.

*(B) To afford adequate deterrence to criminal conduct.*

The significant sentence which the Court will impose will serve as a deterrent to others contemplating similar conduct.

*(C) To protect the public from further crimes of the defendant.*

The defendant will be in custody for a long period of time which will serve to protect the public. Beyond that and when released, the defendant will be closely supervised by the U.S. Probation Office with certain treatment requirements and restrictions. These measures will further extend the protection of the public.

*(D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

The defendant is clearly in need of sex offender and psychological treatment. Both should be made part of his term of imprisonment and subsequent supervision in the community.

### Conclusion and Recommendation

For all of the reasons advanced in this memorandum, the defendant respectfully asks the Court to consider imposing a sentence below the AGR under *Booker*. A host of circumstances in his early family life and consequent psychological afflictions led unfortunately to his obsession with child pornography and ultimately to his being before this Court. Beyond these, the defendant

requests that the Court impose a sentence that has a measure of equity with that of related case ▮▮▮▮▮▮▮▮ so as to avoid unwarranted sentence disparity between the two.

Accordingly, the defendant respectfully requests that the Court consider imposing the following sentence:

A term of imprisonment of 100 months.

A judicial recommendation to the Bureau of Prisons to designate FMC-Devens for service of this sentence and to provide the defendant with sex offender and psychological treatment.

A term of supervised release of five years with the following special conditions:

    Participation in a program of sex offender and psychological treatment, including polygraph testing, as ordered by the probation officer;

    Registration as a Sex Offender as required by the jurisdiction in which the defendant resides;

    Prohibition of possession and/or use of any computer or internet-capable device without prior approval of the probation officer.

Payment of a special assessment of $200.

 

Respectfully submitted
Hanford Chiu,
By his Attorney,

Date: February 1, 2021    /s/    Paul J. Garrity
Paul J. Garrity
Bar No.
14 Londonderry Road
Londonderry, NH 03053
603-434-4106

## CERTIFICATE OF SERVICE

I, Paul J. Garrity, herein certify that on this 1st day of February, 2021, a copy of the within motion e-filed for all parties involved.

Date: February 1, 2021    /s/    Paul J. Garrity
Paul J. Garrity